## HONE WU v. UNITED STATES.

### LEE FONG v. SAME.

#### Nos. 4697, 4698.

Circuit Court of Appeals, Seventh Circuit.
June 22, 1932.

Rehearing Denied Sept. 15, 1932.

Charles F. Hille and David D. Stansbury, both of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., and Mary D. Bailey and Mary C. Whelan, Asst. U. S. Attys., all of Chicago, Ill., for the United States.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge.

These appellants were jointly indicted with another, and all were convicted and sentenced on an indictment of two counts charging, respectively, bribing and attempting to bribe a federal narcotic officer, and conspiracy to bribe the officer. Each was sentenced on each of the counts to imprisonment in the penitentiary, the sentences as to each count to be served concurrently.

The alleged errors are: (1) The indictment fails to allege that appellants had knowledge of the official character of the alleged officer. (2) The description in the indictment of the alleged officer as "Federal Narcotic Agent" is not sufficient, in that there is no allegation of the department in which he was purporting to act. (3) There appears no attempt to influence the officer with reference to matters wherein he had any duty. (4) There was no evidence to sustain the judgment against Lee Fong. (5) There was no evidence to sustain the conspiracy count.

In charging the crime of bribing an officer, the indictment must in some manner set out defendants' knowledge of the officer's official capacity. In Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 546, 37 L. Ed. 419, the court said: "It seems clear that an indictment against a person for corruptly, or by threats or force endeavoring to influence, intimidate, or impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, or set out facts that show knowledge or notice, on the part of the accused that the witness or officer was such." In Cohen v. United States (C. C. A.) 294 F. 488, 490, there was before the court an indictment in like form as that here. It was there held that the allegations in the indictment set out facts which sufficiently indicated that the alleged officer was in fact such. We quote with approval that court's discussion thereon:

"Doubtless also it would have been better for the draftsman of this indictment to allege in direct words the existence of this knowledge or belief by the respondent; but the sufficiency of the indictment, especially after conviction, is no longer tested by the nicety of expression once required. If by fair and reasonable construction, it alleges every essential element to make out the crime, it is sufficient. This indictment alleges that Cohen did unlawfully, knowingly, and willingly 'offer and give five thousand dollars in money of the United States to Robert E. Flora, a person then and there acting for and on behalf of the United States in the official function and capacity of prohibition enforcement agent in charge,' etc.

"We pass by the question whether the force of the word 'knowingly' is sufficiently carried over into the latter part of this allegation to meet the necessity for alleging scienter * * *; for we think the necessary knowledge or belief is sufficiently to be implied from other parts of the indictment. After thus reciting that Flora was a prohibition enforcement agent and that Cohen offered and gave him this money, the indictment proceeds to charge, not that this was done to influence the action of the man, Flora, but with an intent to cause the 'said prohibition agent' to violate his official duty in three other particulars. These statements, in substance and in necessary effect, mean that Cohen understood and supposed that Flora was a prohibition agent with the necessary authority to do the things which he was to be bribed not to do. There can be no other reasonable construction, and they sufficiently allege all the scienter which was necessary to be stated. Clearly no allegation can be required that the respondent knows that the official capacity or function existed. Often, if not usually, he cannot have absolute knowledge. He offers the bribe because he supposes the one to whom he offers it has the necessary official function; and, if his supposition is right, he commits the offense denounced by the statute."

To like effect are Bradshaw v. United States, 15 F.(2d) 970 (C. C. A. 9), and Henderson v. United States, 24 F.(2d) 811 (C. C. A. 4).

We believe that from the allegations the necessary inference would flow that the defendants intended to bribe, and conspired to bribe, this man in his supposed capacity as a federal narcotic agent, and that the indictment is not in this respect subject to attack, particularly when, as here, its sufficiency was for the first time challenged through appellants' brief on appeal.

The description of this officer as a "Federal Narcotic Agent" we regard sufficient. The Narcotic Act, § 10, provides (26 U. S. C. § 706 [26 USCA § 706]) that the "Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, is authorized to appoint such agents * * * in the field * * * as may be necessary to enforce the provisions" of this act; and the act empowers the Commissioner of Internal Revenue, with the approval of the Secretary, to make all needful rules and regulations for carrying the act into effect. Article 101 of Regulations 5 makes provision for such agents, and specifies they shall be designated as "narcotic agents," and that it is primarily their duty to see that all requirements of the law and the regulations are strictly complied with. That such agents are officers of the United States within the meaning of the law is apparent from the decided cases. Steele v. United States, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761; Maryland v. Soper, 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449; Dropps v. United States (C. C. A.) 34 F.(2d) 15; Biddle v. Wilmot (C. C. A.) 14 F.(2d) 505.

The third contention is predicated upon the assumption that the persons had been arrested and the property seized and were in the custody of other narcotic agents before Westover came upon the scene. It is true that other agents had preceded Westover to the place and were on the premises holding the arrested persons and narcotics seized when Westover appeared. But it seems that Westover was the chief officer, and the others were subject to his orders, and that he did in fact take charge. As was stated in Mays v. United States (C. C. A.) 289 F. 486, 487, until the defendant was taken before a United States commissioner, and a warrant in usual form issued and served, "the arrest was still a continuing process and if, before it was completed, the officer had turned him loose, the result, for many legal as well as practical purposes, would have been precisely the same as if hands had never been laid on him at all."

At the stage when the bribe was given, Westover had it in his power to have the men released, and to return the seized narcotics. It was in the faith that he had that power that the bribe money was raised and paid over.

As to Hone Wu, the evidence clearly warranted the conclusion that he procured and paid the $300 for the purpose of influencing the officer to discharge the men who were being held and to return the narcotics seized, a fact which he practically admitted while testifying.

But it is claimed that as to Lee Fong there is no evidence to indicate he knew or had reason to suspect the real purpose for which the money was raised and paid. The evidence as to him is not so clear as might be desired in order to support his conviction, but we cannot say there appear no facts tending substantially to indicate his guilt. He came to the place after the raid had been made by the officers and was taken into custody with the rest of them. When Hone Wu agreed to get the $300 he told Westover he wanted to take two of the arrested men to help him get the money. It was testified that Hone Wu said to the agent, "You stay here with me and these boys are going up street to get the money"; and that in a few minutes the men came back and conversed in Chinese with Wu, who then said, "They have got to go to another place," and in a little while they came back with the money. While it is not testified that any one told Lee Fong what the money was for, under the peculiar circumstances it would hardly be reasonable to infer that he did not know. What was said to him in Chinese does not appear, but what was done tells its tale. Indeed, Wu, while undertaking to exculpate Fong, did testify that he submitted to the men in custody a proposition of Westover to pay $700, which they said they could not raise and made a counterproposition to raise $300. Fong must have been present when these things were discussed with the detained men, for he was thereupon selected, with the third defendant, to go out and raise the money, which he got, brought back, and in his presence was turned over to the officer. The jury had the right to draw from these facts the conclusion of his guilt, notwithstanding his own protestation of innocence.

It is contended that there was no evidence of a conspiracy. While we believe that proof of a conspiracy sufficiently appears, yet under the circumstances there is no practical advantage in considering that proposition. Concluding, as we do, that Wu and Fong were knowingly instrumental in secur-

ing the money which in their presence and with their participation was handed over to the officer as a bribe, and so are guilty under the first count, no benefit could accrue to appellants whatever we might hold respecting the concurrently running sentence on the conspiracy count.

As to each appellant the judgment appealed from is affirmed.