Robert N. Gorman, Cincinnati, Ohio, Charles E. Lester, Jr., Newport, Ky., for appellants.

J. Leonard Walker, U. S. Atty., Rhodes Bratcher, Asst. U. S. Atty., Louisville, Ky., for appellee.

Before MARTIN, McALLISTER and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

The appellants, Roy E. Anderson and John R. Lewis, Jr., were convicted by the verdict of a jury on a one-count indictment charging violation of section 1503, Title 18, United States Code Annotated, and each was sentenced by the United States District Judge to imprisonment for two years. Prior to December 1, 1952, Anderson had been a federal narcotic agent, whose duty was to enforce the anti-narcotic laws of the United States. At the time of the commission of the offense charged in the indictment, February 18, 1953, Anderson and Lewis were engaged, as partners, in the practice of law at Cincinnati, Ohio.

The succinctly drawn indictment charged: "That on or about the 18th of February, 1953, at Louisville, in the Western District of Kentucky, Roy E. Anderson and John R. Lewis, Jr., did corruptly endeavor to impede the due administration of justice; that is to say, on or about the date aforementioned, the said Roy E. Anderson and John R. Lewis, Jr., at Louisville, Kentucky, did agree and promise to W. Stewart Carter that they would alter the testimony of Roy E. Anderson and the testimony of Clifford W. Powers, the said Roy E. Anderson and Clifford W. Powers then being material witnesses in a case then pending in the United States District Court for the Western District of Kentucky against the said W. Stewart Carter, same being indictment No. 23,589, and did by this means corruptly endeavor to impede the due administration of justice."

After verdict, appellants filed a motion in arrest of judgment attacking the sufficiency of the indictment. They do not contend on this appeal that there was insufficient evidence to support their conviction and do not even print the record of the testimony adduced. They do print the charge of the district judge, however, for the stated reason that the jury was asked to pass on questions that did not involve the laws of the United States. Appellants assert that the prosecution averred that they had obtained $500 from Dr. W. Stewart Carter of Louisville, in consideration of their agreement to have the testimony changed at the forthcoming trial of the doctor for alleged violation of the federal anti-narcotic laws. They admitted recorded conversations with the doctor to that end, but state that they were seeking to entrap him so that his conviction would be assured. Appellants concede, however, that "since the facts were not denied, the inferences to be drawn from the facts were clearly for the jury."

As the basis of their appeal, appellants insist that the indictment returned against them does not state a criminal offense. They subdivide their argument into three closely interrelated points:

(1) that they were deprived of their constitutional rights in that, by the construction placed by the trial court on Code Section 1503 of Title 18, the charge against them was too vague and indefinite; (2) that, if a proper construction be placed upon the statute, no offense was charged, in that the indictment does not charge *contact with a witness;* and (3) that, though knowledge is a necessary averment, the indictment fails to charge knowledge on the part of appellants of the pending prosecution of Dr. Carter.

None of these points is well grounded, either in law or in logic. A careful reading of the language of the comprehensive pertinent statute and the clear and simple language of the indictment charging the violation of the statute impels this conclusion. The statute, section 1503, Title 18, U.S.C.A., provides: *"Whoever corruptly,* or by threats or force, or by any threatening letter or communication, *endeavors to influence, intimidate, or impede any witness, in any court of the United States* or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination *before such officer, commissioner,* or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, *or endeavors to influence, obstruct, or impede, the due administration of justice,* shall be fined not more than $5,000 or imprisoned not more than five years, or both." June 25, 1948, C. 645, 62 Stat. 769. (Italics ours.)

The language of the indictment charging the offense is in strict conformity with the definition of the offense in the statute. Certainly, there is nothing vague or indefinite in the charge that appellants endeavored to impede the due administration of justice, in that they promised Dr. Carter that they would alter the testimony of Anderson himself and that of Powers, both being at the time material witnesses in a pending criminal case (specified by indictment number) against Dr. Carter in the jurisdiction of the United States District Court for the Western District of Kentucky; and that they did, by such means, "corruptly endeavor to impede the due administration of justice."

This court has held repeatedly that the required clarity of the charge laid in an indictment is only such as will fairly apprise the defendant of the crime intended to be alleged, so as to enable him to prepare his defense and to make the judgment, whether of acquittal or conviction, a complete defense to a second prosecution for the same offense. See, among our many decisions to such effect: Bettman v. United States, 6 Cir., 224 F. 819, 826; Pierce v. United States, 6 Cir., 86 F.2d 949, 951; Bogy v. United States, 6 Cir., 96 F.2d 734, 736; Hughes v. United States, 6 Cir., 114 F.2d 285, 288; Richardson v. United States, 6 Cir., 150 F.2d 58, 60; Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353, 360. This criterion was approved in Ross v. United States, 6 Cir., 180 F.2d 160, 164, where the appellants contended, as appellants do here, that the indictment did not sufficiently state an offense against the laws of the United States.

In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, Mr. Justice Sutherland asserted:

"The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606." By this standard, appellants have no just complaint of the insufficiency of the indictment, nor can they complain that the indictment fails to state a criminal offense. All essential elements of the offense condemned by the statute are embraced in the indictment.

We are unable to see any force in the argument of appellants that the opinion of the Supreme Court in United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 300, 65 L.Ed. 516, buttresses their contention that the Fifth Amendment to the Constitution of the United States was violated by the interpretation placed by the trial judge upon the indictments and the statute, when he instructed the jury that the defendants would be guilty should it be found that by their actions they "corruptly endeavored to impede the due administration of justice." [1]

Appellants knew that Dr. Carter was under indictment for violation of the anti-narcotic laws of the United States; and they were charged with and found guilty of going to the doctor and offering to alter the testimony of one of them, namely Roy E. Anderson, as well as the testimony to be given by another witness, Clifford Powers. Such testimony was to be given in the criminal case against Dr. Carter then pending in the United States District Court for Western Kentucky. The indictment concluded with the charge that, by these means, appellants corruptly endeavored to impede the due administration of justice.

■ It would seem easy to understand in the context what was meant by a corrupt endeavor to impede the due administration of justice. There can be no reasonable doubt that an effort to alter testimony of witnesses for a corrupt pur-

1. Judge Shelbourne was correct in saying in his instructions to the jury: "The charge is that the defendants agreed and promised to Dr. Carter, corruptly, that is in consideration of money paid to them, that they would alter the testimony of Anderson and one Clifford W. Powers, who was a witness as was Anderson, in a case then pending in this Court by indictment against Dr. W. Stewart Carter referred to as indictment number 23,589, and that indictment is a part of the testimony in this case. It was introduced and you have had and will have, if you desire further examination, an opportunity to read and examine that indictment.

"The indictment charges that by that means, by corruptly accepting money in consideration of agreeing to alter testimony in the case against Dr. Carter that they thereby made the endeavor to impede the due administration of justice, which is the thing denounced by the statute.

"Ladies and gentlemen, endeavor, as it is used in that statute, is a broader term and it is intended to be a broader term than the word attempt. The word endeavor as it is used there means any effort or essay to do or accomplish the evil purpose which this statute was designed and enacted to prevent. It is not material to you whether that effort was successful or not successful. It is not material under this statute that the wrongful effort or endeavor succeed. That is immaterial.

"The thing that the statute condemns and seeks to punish is any effort to accomplish or bring about the things that this statute was designed to prevent, and that is the corrupt effort to impede the orderly and due processes and administration of justice.

"Admittedly in this case there was pending the indictment against Dr. Carter."

pose would plainly be an endeavor to impede the due administration of justice. We think the implication so plain that the point need not be labored.

In the Cohen Grocery Company case, supra, heavily stressed by appellants, the Supreme Court was dealing with a section of the Food Control Act of 1917, as later amended, which denounced and penalized the making by any person of "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries". It was held that no ascertainable standard of guilt had been set up and that the statute was therefore repugnant to the Fifth and Sixth Amendments to the Constitution, which require due process of law, and that persons accused of crime shall be adequately informed of the nature and cause of the accusation. We find no analogy between that case and the case at bar. Opinions could well differ on what would constitute unjust or unreasonable charges for necessaries; but there would seem to be no room for conflict among reasonable minds as to whether actions such as were charged against appellants would constitute an endeavor to impede the due administration of justice.

The opinion of the Supreme Court in United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553, reported in the same volume in which the Cohen Grocery case is reported, refutes the arguments of counsel for appellants. The court was there construing section 135 of the United States Criminal Code as applicable to the corrupt impeding of the due administration of justice by the action of the defendant in contacting the wife of a juror concerning the juror's attitude in a specified case. Note well that *no contact was had with the juror himself*. The opinion pointed out that, by using the word "endeavor" instead of "attempt," technicalities had been avoided by the statute, and that it covered any effort to accomplish the evil purpose which the section was designed to prevent.

The objective of the statute under survey has been well stated in Catrino v. United States, 9 Cir., 176 F.2d 884, 887: "The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined. The concept of 'justice' upon which the foundations of our society rest and which courts and judges are sworn to uphold encompasses not only the right of an accused to a fair trial, but it also calls for punishment if the accused is found guilty. This concept merely recognizes the inherent right of society to protect itself and its innocent members from vicious acts which imperil one of the most vital safeguards of our system of law. It is well to emphasize this wholesome idea as we contemplate the mounting waves of crime."

As was wisely said by Judge Rufus Foster, of honored memory as one of the nation's most efficient and experienced federal trial judges before his promotion to the Court of Appeals: "The [obstruction of justice] statute is one of the most important laws ever adopted. It is designed to protect witnesses in Federal courts and also to prevent a miscarriage of Justice by corrupt methods." Samples v. United States, 5 Cir., 121 F. 2d 263, 265. See to same effect Broadbent v. United States, 10 Cir., 149 F.2d 580, 581, wherein a judgment of conviction and sentence was affirmed, the Court of Appeals stating in the concluding paragraph of its opinion that the jury was justified in believing beyond a reasonable doubt that the appellant, by promises of financial security and threats of character defamation, had endeavored to influence corruptly a witness in a criminal proceeding pending in the United States District Court and to obstruct and impede justice therein. Cf. Smith v. United States, 8 Cir., 274 F. 351, 353.

Appellants' advocates place greatest emphasis upon the contention that the indictment failed to allege knowledge of defendants of the pending prosecution of Dr. Carter; and that, upon authority of Pettibone v. United States, 148 U.S.

197, 13 S.Ct. 542, 37 L.Ed. 419, defendants, therefore, could not properly be convicted under the statute of obstructing or impeding the due administration of justice in the federal court, for the reason that the indictment does not allege that they knew that "the particular justice was there being administered." We consider Pettibone v. United States inapposite. The opinion of Chief Justice Fuller pointed out, 148 at page 204, 13 S.Ct. at page 545, that "the pleader carefully avoided the direct averment that the purpose of the confederation was the interruption of the course of justice in the United States court." Furthermore, in the Pettibone opinion, it was made clear that the indictment must either charge knowledge or notice, *"or set out facts that show knowledge or notice"* on the part of the accused. In the case now before us, the indictment, by necessary implication, makes it plain that the defendants *knew* that Anderson and Powers were material witnesses in a case then pending in the United States District Court against Carter upon an indictment specified by number; and that they agreed to alter the testimony of Anderson himself and that of the witness Powers, and thus corruptly endeavored to impede the due administration of justice. It seems to us to be a mere splitting of hairs to argue that the indictment under consideration does not impute the required *scienter* to appellants Anderson and Lewis.

In Sparks v. United States, 6 Cir., 90 F.2d 61, 63, this court, discussing the argument of the appellant Sparks based on the Pettibone case, said: "The counts charge appellant with the intent to obstruct [a Deputy United States Marshal] in the discharge of his official duty, and thus fairly charge appellant's knowledge of [the officer's] official status. The defect was one of form only. The indictment, taken as a whole, did not mislead the accused, and the conviction will not be reversed because of this technical objection."

Chief Judge Hutcheson employed the following forceful language in Parsons v. United States, 5 Cir., 189 F.2d 252, 253: "The attack upon the indictment for failing to specifically allege that defendant knew that the person he was charged with endeavoring to corruptly influence was, or was to be, a witness, is completely hypercritical and without substance. The indictment, in the exact language of the statute, plainly and by necessary implication, precisely charges the defendant with the crime denounced thereby.

"The cynically technical approach which formerly enshrouded the consideration of even the plainest and simplest indictments, and, in many instances, made a mockery of simple justice, no longer governs their consideration.

"On the contrary, the trial court and this court are enjoined to, and do, examine into, and determine, the validity of attacks upon indictments, especially of this kind, from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding."

In two opinions from the Seventh Circuit, wherein convictions for bribery were affirmed on appeal, sufficient allegations of the required *scienter* were said to be revealed in the respective indictments. The opinion in each case shows that Pettibone v. United States, supra, had been duly considered. Hone Wu v. United States, 7 Cir., 60 F.2d 189; Chiaravalloti v. United States, 7 Cir., 60 F.2d 192. Cf. Kloss v. United States, 8 Cir., 77 F.2d 462. See also the short, well reasoned opinion of Judge Church Ford in United States v. Combs, D.C. E.D.Ky., 73 F.Supp. 813. For another illustrative case upholding convictions for violation of the obstruction of justice statutes, see opinion of Chief Judge Parker in Nye v. United States 4 Cir., 137 F.2d 73. See also, from the same circuit, Hicks v. United States, 4 Cir., 173 F.2d 570.

■ Since the submission of the case, attorneys for appellants have filed a sup-

plemental memorandum of authorities. They point to the recent decision of the Supreme Court in United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, June 7, 1954, where the court recognized the principle that an Act of Congress should be so construed as to uphold its constitutionality rather than to strike it down as invalid because of vagueness. However, in the majority opinion written by the Chief Justice, construing the Federal Regulation of Lobbying Act, sections 261 to 270, Title 2, U.S.C.A., the Supreme Court said that the language of the Act should be construed to refer only to "lobbying in its commonly accepted sense"—to direct communication with members of Congress on pending or proposed legislation. The comment was made: "In construing the Act narrowly to avoid constitutional doubts, we must also avoid a construction that would seriously impair the effectiveness of the Act in coping with the problem it was designed to alleviate." As interpreted by the Supreme Court in the Harriss case, the Lobbying Act was declared to meet the constitutional requirement of definiteness. The highest court cites its previous opinions in Boyce Motor Lines v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367; United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 97 L.Ed. 770; Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886; and United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877.

■ Whenever it is contended that an Act of Congress is unconstitutional for vagueness, the Act itself must be carefully examined to ascertain its definiteness. After all, other cases are helpful only if they bear true analogy. In the case at bar, it is perfectly apparent that no unconstitutional vagueness inheres either in the statute or in the indictment. From the authorities cited by the Supreme Court in the Harriss case, supra, it appears that many criminal statutes of the United States have been upheld against a far more logical charge of vagueness than that presented by appellants in the instant case.

■ We think it appropriate to quote the concluding language of Chief Justice Vinson in Jordan v. DeGeorge, 341 U.S. 223, 232, 71 S.Ct. 703, 708, 95 L.Ed. 886: "We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. United States v. Wurzbach, 1930, 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508. Impossible standards of specificity are not required. United States v. Petrillo, 1947, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322.

"We conclude that this test has been satisfied here. Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. We have recently stated that doubt as to the adequacy of a standard in less obvious cases does not render that standard unconstitutional for vagueness. See Williams v. United States, supra [341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774]. But there is no such doubt present in this case. Fraud is the touchstone by which this case should be judged. The phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct. We therefore decide that Congress sufficiently forewarned respondent that the statutory consequence of twice conspiring to defraud the United States is deportation."

The judgment of conviction and sentence in the district court as to each appellant is affirmed.