**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gerald M. POPKIN, Defendant–Appellant.**

**No. 90–8961.**

United States Court of Appeals, Eleventh Circuit.

Oct. 9, 1991.

Donald L. Wolff, St. Louis, Mo., Barry A. Karp, Atlanta, Ga., for defendant-appellant.

Robert E. Lindsay, Chief, Karen Quesnel, Alan Hechtkopf, Crim. Appeals and Tax Enforcement Policy Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before ANDERSON, Circuit Judge, RONEY * and LIVELY **, Senior Circuit Judges.

LIVELY, Senior Circuit Judge:

The defendant, Gerald M. Popkin, appeals from his jury conviction for violating 26 U.S.C. § 7212(a), one of the provisions of Chapter 75 of the Internal Revenue Code, which creates a number of tax crimes. Specifically, § 7212 criminalizes attempts to interfere with administration of internal revenue laws, and subsection (a)

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals, for the Eleventh Circuit.

** Honorable Pierce Lively, Senior Circuit Judge of the Sixth Circuit, sitting by designation.

prohibits corrupt or forcible interference. The defendant contends that neither the activities referred to in the indictment nor those revealed by the evidence constitutes a crime under § 7212(a).

## I.

### A.

The criminal charges against the defendant stem from a government sting operation conducted with the assistance of Stephen Musick. Musick earned approximately $250,000 in 1977 through his involvement in drug transactions. In 1978, Musick requested and received assistance from the defendant, who was then a practicing attorney, in preparing 1977 tax returns which misrepresented the source and amount of Musick's 1977 income. The defendant had no further contact with Musick until 1985.

Musick was arrested in 1982 for selling approximately 12 kilograms of cocaine. While serving his prison term, Musick provided information to federal agents regarding his 1978 dealings with the defendant. After acquiring this information, government agents requested and Musick agreed to participate in a sting operation directed at the defendant.

Musick contacted the defendant in March 1985 and requested a meeting at the defendant's law office in Atlanta. Unaware that Musick was now acting in cooperation with the government, the defendant agreed to the meeting, which was recorded by Musick with a concealed audio recording device. Musick informed the defendant that he had earned approximately $200,000 on cocaine deals while he was in prison and that he now wanted to resurface and start showing income by filing tax returns for 1983 and 1984 and by getting into the construction and real estate business in California. Musick informed the defendant that his money from the drug deals was being held by an entity called Mid–American Financial in an offshore account and that he desired assistance in repatriating the money in a transaction that would disguise the source of the funds and require paying less than full income taxes.

The defendant recommended that he form a California corporation for Musick, that Musick sell stock in the new corporation to Mid–America Financial for $200,000, report heavy losses in the new corporation and then repurchase the stock for $3,000 to $10,000. The defendant cautioned Musick to comply with the formal requirements for running a corporation in order to maintain the proper corporate appearance. Later that same day, Musick arranged to meet with the defendant and two undercover agents posing as representatives of Mid–America Financial. The parties discussed formation of Musick's new corporation and methods of repatriating Musick's offshore funds.

In April 1985 the defendant met again with Musick and the two undercover agents in a video taped meeting at Mid–America's offices in St. Louis. At this meeting, the defendant delivered to Musick tax returns for the years 1983 and 1984 that the defendant had prepared. The defendant had reported $50,000 as gross income on Schedule C of the tax returns for each year. This sum was reported only as gross receipts or sales without any further indication of its source. These tax returns were never filed.

Subsequent to these meetings, the defendant set up the S. Musick Corporation in California, obtained a corporate seal which he mailed to Musick, and filed a statement of domestic stock corporation with the State of California. The defendant billed Musick a total of $1,755 for costs associated with formation of the corporation. This bill was paid by Mid–America Financial. The defendant also received $5,000 for preparation of the two income tax returns.

### B.

The defendant was charged in a three count indictment in January 1990. Counts I and II of the indictment related to defendant's actions in preparing Musick's tax returns for 1983 and 1984. The defendant was acquitted on these counts but was convicted on count III, which charged the defendant under 26 U.S.C. § 7212(a) by alleging that Popkin

did corruptly obstruct and impede and endeavored to obstruct and impede the

due administration of Title 26, United States Code, by preparing the tax returns described in Counts One and Two above and by creating a California corporation for Stephen Musick expressly for the purpose of enabling the said Stephen Musick to disguise the character of illegally earned income and repatriate it from a foreign bank.

At trial, count III of the indictment was amended to delete references to the tax returns described in counts I and II of the indictment, and the jury considered it as redacted. The charge against the defendant in count III of the indictment was thus based solely on the allegation that defendant corruptly obstructed and impeded and endeavored to obstruct and impede the due administration of Title 26 by creating the S. Musick Corporation.

In a pretrial motion, the defendant moved the district court to dismiss count III of the indictment for failure to state an offense within the statute. The defendant argued that § 7212(a) requires the exercise of force, intimidation or other menacing conduct directed against the person of a specific federal agent and that no such conduct was involved in the defendant's assistance in forming the S. Musick Corporation. The district court denied this motion at the commencement of the trial in July 1990.

At trial, the defendant moved for a judgment of acquittal on count III at the close of the government's evidence and at the close of all evidence, in each instance contending that count III failed to state an offense within § 7212(a). These motions were denied. On July 13, 1990, the jury returned a verdict of guilty on count III of the indictment. The defendant filed a motion to set aside the jury verdict, which was denied by the district court. The defendant was sentenced to one year and one day in prison and ordered to pay restitution to the government of $6,755, and this appeal followed.

## II.

Decision of this case hinges on our construction of 26 U.S.C. § 7212(a), which provides:

**§ 7212. Attempts to interfere with administration of internal revenue laws**

**(a) Corrupt or forcible interference**

Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

### A.

In his opening brief the defendant made but one argument—that it is an essential element of § 7212(a) that the act or conduct of the accused involve the use of force or threats of force against the person of a particular government agent. Thus, he argued, "[a]s the government failed in this case to prove any type of assaultive conduct or force, or any type of conduct whatsoever directed at or against a specific employee," he was entitled to a judgment of acquittal under count III. The defendant recognized that he was charged under "the latter half" of the statute, but contended that this portion of § 7212(a) requires the same element of force or threats of force as the first clause. He also repeated his assertion at trial that the statute requires that the force or threats be directed at an individual agent: "Interference with the operation of the IRS *as an agency* was not included, nor contemplated." (emphasis in brief).

The defendant sought to buttress this argument by stating that no reported case has involved a § 7212(a) prosecution where there was not an allegation that the defendant used force or threats of force to intimidate or otherwise prevent or attempt to prevent a particular IRS agent from performing his or her official duties. He then listed eight cases from four circuits in which the element of force against a particular agent was charged. Although he conceded that § 7212(a) is not ambiguous, the defendant argued that the text of previous similar statutes and the legislative history of the present statute, adopted as part of the Revenue Act of 1954, reinforce his interpretation.

In his reply brief, for the first time, the defendant argued that there was no evidence that the only act charged in the redacted indictment—creating a California corporation for Musick to disguise the character of illegally earned money and repatriate it—either obstructed or was intended to obstruct or impede the due administration of the Internal Revenue Code.

### B.

The government's straightforward response to the defendant's principal argument was that the plain language of the second clause of § 7212(a) makes it clear that force and threats of force are not required. That clause, under which the defendant admits he was charged, makes it unlawful "in any other way corruptly *or* by force or threats of force" to obstruct or impede or endeavor to obstruct or impede the due administration of the tax laws. (emphasis added). The first clause does require force or threats of force, but the second clause is joined to the first by the disjunctive "or," indicating a broad range of other activities that may obstruct or impede administration of the tax laws.

The government also asserted that other courts had rejected the contention that § 7212(a) requires acts aimed at a particular agent and identified one prosecution under the section that only charged an obstruction or impediment to the agency's

administration of the Code where no particular agent was involved.

In arguing that the second clause of § 7212(a) contemplates and condemns a broad and inclusive range of conduct the government cited cases interpreting similar "omnibus clauses" in parallel obstruction of justice statutes. See 18 U.S.C. §§ 1503, 1505. The courts have held, according to the government, that similarly inclusive language in the general obstruction of justice statutes has been held to give notice of the range of acts that are prohibited and criminalized by those statutes. Thus, the broad language does not create a due process problem.

Noting that the defendant admits that § 7212(a) is not ambiguous, the government argued that resort to the scant legislative history of § 7212(a) is not required and, indeed, would be improper. The government also contended that the litany of cases in which force or threats of force were alleged does not alter the plain meaning of the statute.

### C.

Much of the discussion at oral argument centered on the word "corruptly." The question raised was whether the obstructing or impeding act charged in an indictment must be, in and of itself, corrupt, or whether an otherwise lawful act could violate the statute by being carried out for a corrupt purpose or in a corrupt manner. It is clear that § 7212(a) does not prohibit and punish money laundering, as such. It was suggested that unless "corruptly" has some meaning that transforms an otherwise legal act[1] into forbidden action, the mere formation of a corporation to repatriate allegedly tainted money could not be considered a violation of this particular statute. This discussion related to the defendant's claim that neither count III nor the evidence supported a conviction for violating § 7212(a).

---

**1.** At the time of the defendant's actions, there was no federal statute that made money laundering a crime. In 1986, Congress enacted such a statute. See 18 U.S.C. § 1956 (1982 ed. Supp. IV).

### III.

#### A.

■ Turning first to the defendant's principal argument—that § 7212(a) requires an allegation and proof of force or threats of force directed at a specific agent or employee—we find little support for this contention. The first clause does require an endeavor to intimidate or impede an officer or employee by force or threats of force, or corruptly. The second clause, however, while retaining the requirement that the accused act corruptly, greatly expands the reach of the statute by providing that it is violated if a person "in any other way," either corruptly or by force or threats of force does the prohibited act. And here, the prohibited act need not be an effort to intimidate or impede an individual officer or employee. Instead, this clause prohibits any act that either obstructs or impedes or endeavors to obstruct or impede, the "due administration" of the Internal Revenue Code.

The defendant's interpretation would render the insertion of "in any other way" and the use of "the due administration of this title" in place of "any officer or employee of the United States" in the second clause meaningless. The defendant argues that the government has never used § 7212(a) for prosecutions in which there was not a claim of the use of force or threats of force against an individual agent or employee. This proves nothing. The defendant cited eight court of appeals decisions under § 7212(a), all of which involved force or threats of force against government representatives. The government cited *United States v. Hatchett*, 918 F.2d 631 (6th Cir.1990). Among other charges in *Hatchett*, one count sought conviction for a violation of § 7212(a) based on a scheme for obstruction of tax collections that was aimed only at the Internal Revenue Service, not at an individual agent.

As the Supreme Court stated in *Parr v. United States*, 363 U.S. 370, 391, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960), "We agree ... that the fact there is no reported decision involving similar factual circumstances or legal theories is not determinative." What is determinative is the clear language of the statute. The second clause conspicuously omits the requirement that conduct be directed at "an officer or employee of the United States government." The defendant concedes that § 7212(a) is not ambiguous, and the different language used in the second clause indicates an intent to sweep more broadly than the language of the first clause.

#### B.

The remaining question with respect to the proper construction of § 7212(a) concerns the twice-used word "corruptly." In *United States v. Martin*, 747 F.2d 1404 (11th Cir.1984), this court dealt with a defendant's attempt to limit the meaning of § 7212(a)'s second clause. After reviewing the text and legislative history of the statute, the court found that the legislative history does not purport to limit the broad language of the statute. "Congress was not required to list in the legislative history every conceivable corrupt endeavor to avoid waiving the statute's application to one type of corrupt endeavor." *Id.* at 1409.

The court then considered caselaw under the general obstruction of justice statute, 18 U.S.C. §§ 1503, 1505, which contain similar "corruptly endeavors" language. Quoting *United States v. Griffin*, 589 F.2d 200, 206–07 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979), which in turn quoted *Anderson v. United States*, 215 F.2d 84, 88 (6th Cir.), *cert. denied*, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954), the court in *Martin* stated:

> The obstruction of justice statute was drafted with an eye to "the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined."

747 F.2d at 1409.

■ The meaning of "corruptly" as used in § 7212(a) and in the general obstruction of justice statute was explained more recently in *United States v. Reeves*, 752 F.2d 995 (5th Cir.), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). In *Reeves* the district court had defined "corruptly" as meaning done "with improper

motive or bad or evil purpose." *Id.* at 997. The court of appeals disagreed, and reversed on this ground. Reasoning that to define "corruptly" in this way would render the "key word" redundant and could potentially raise questions of overbreadth and vagueness, the court concluded that "corruptly" is used for the purpose of "forbidding those acts done with the intent to secure an unlawful benefit either for oneself or for another." *Id.* at 1001. The court made this determination after considering cases under the general obstruction of justice statute as well as the legislative history of § 7212(a). In adopting this definition, the *Reeves* court declined to follow an earlier Fifth Circuit case decided under the "plain error" standard. *See United States v. Partin,* 552 F.2d 621 (5th Cir. 1977). *Partin* was one of the cases cited by this court in *Martin* and by which the Court was "guided" in construing "corruptly" as used in § 7212(a).

We agree with the definition adopted in *Reeves.* It comports with our view that "corruptly" was used in § 7212(a), as in the general obstruction of justice statute, to prohibit all activities that seek to thwart the efforts of government officers and employees in executing the laws enacted by Congress. In a system of taxation such as ours which relies principally upon self-reporting, it is necessary to have in place a comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that "variety of corrupt methods" that is "limited only by the imagination of the criminally inclined." *Martin,* 747 F.2d at 1409. We believe that § 7212(a) is such a statute and that the use of "in any other way corruptly" in the second clause gives clear notice of the breadth of activities that are proscribed.

### IV.

■ The question remains whether the evidence in this case established a violation of § 7212(a), even under the reading we have given the statute. After examining the trial record, and particularly the tapes of conversations between the defendant and Musick, we find that the evidence is sufficient to support the defendant's conviction for violating § 7212(a). Thus, the district court correctly denied his motion for a judgment of acquittal.

The record reveals that the defendant did create the California corporation for the purpose of enabling Musick to disguise the character of illegally earned income and to repatriate it. Popkin acted corruptly, moreover, because at least one intent in creating the corporation was to secure an unlawful benefit for his client. The purpose of the corporation went beyond repatriating money held in a foreign bank. It provided a means, in creating a paper loss from inter-corporate transactions, by which the funds held abroad and repatriated appeared to be less than the actual amount of untaxed money that Musick should have reported for 1983 and 1984.

At the first monitored meeting on March 26, 1985, Musick stated three objectives for which he was seeking the defendant's help:

1. He wanted to retrieve approximately $220,000 that he had made on two cocaine deals in 1983 and 1984, from a foreign account controlled by Mid–America Financial;

2. He wanted to "surface and start making a living, showing a living" by getting into building and real estate in California;

3. He wanted to avoid paying full income taxes on the $220,000. As Musick said to the defendant, "I wanna pay taxes a little bit, but, you know, I don't wanna get raped again, you know." He also wanted to avoid acknowledging an interest bearing foreign account.

Musick asked the defendant for suggestions because his associates at Mid–America Financial were not tax specialists and did not want any problems with the IRS while "doin a service." He also told the defendant that he was "very vulnerable to IRS" and didn't want to be tied into the foreign account that was in Mid–America Financial's name. With this background, the defendant advised Musick, "the best thing you can do is go into your own business" because capital infusion is different from loans and other cash transactions. Ultimately the defendant advised Musick to

issue stock in his new corporation to Mid-America Financial for $200,000, then report "bad business" and buy the stock back for $3,000 to $10,000. The people at Mid-America would not get hurt—they were just providing a service all along. Once the stock was repurchased for $3,000 to $10,000 Musick would again own 100% of the new corporation, and the corporation would have the $200,000. At the end of these various steps, the defendant advised that this money would be "just plain old money that you sold stock for."

The effect of all these maneuvers would be more than just to disguise the source of the money thus repatriated. It would also place in Musick's wholly owned corporation the power to determine when, if ever, the $200,000 earned in 1983 and 1984 would be reported for income tax purposes. The income tax laws require annual reporting of all income *in the year earned.* The entire system is built on the basis of annual reporting, and any arrangement that permits a taxable entity to avoid reporting income in the taxable year when earned has the effect of skewing the system and thus impeding or obstructing the due administration of the tax laws.

A review of the entire record leaves no doubt that the defendant endeavored to impede or obstruct the due administration of the tax laws in the advice he gave Musick. He was clearly aware that one of Musick's three purposes was to avoid paying the full tax on his 1983 and 1984 drug-related earnings. Throughout the conversation of March 26 the defendant referred to the tax issue as well as the need to disguise the illegal source of the money and repatriate it. While it involved "laundering" $200,000, the plan the defendant proposed involved more than money laundering. It was designed also to secure an unlawful tax benefit for Musick, an endeavor that § 7212(a) prohibits.

The judgment of the district court is AFFIRMED.

RONEY, Senior Circuit Judge, dissenting:

I respectfully dissent.

Although the indictment as originally written may have made sufficient allegations to state a crime under this statute, the amended indictment, which deletes the allegations concerning the preparation of false returns, fails to do so. The Government by insisting upon prosecuting the defendant under this statute distorts the meaning and purpose of the statute. That the defendant committed acts in violation of the criminal laws of the United States is not the question. If the acts charged did not violate this statute, then the indictment should have been dismissed and the Government should be forced to proceed under the statutes which Congress intended for prosecution of defendant's transgressions.

The indictment against Popkin alleged that he "did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of Title 26, United States Code, by creating a California corporation for Stephen Musick to disguise the character of illegally earned income and repatriate it from a foreign bank."

The purpose of forming this corporation was to repatriate funds located in an offshore account back into this country. This is a consummate example of money laundering which would have been punishable under 18 U.S.C. § 1956 had the acts been committed after its passage in 1986. It is clear that the primary purpose in forming the corporation was to get the money back into the country. Nothing concerning taxes or much of Popkin's activity relied upon by the court was alleged in the indictment in itself. After striking the accusations concerning filing false returns, the indictment alleges only that the defendant created a corporate entity for the purpose of disguising illegal income in violation of Title 26. The indictment does not allege and the Government even now does not satisfactorily explain how this without more violates the tax laws. Although the illegal nature of the funds would have been successfully concealed, Musick still could have paid any tax obligations owed on the money without violating the tax laws at all.

It is important to bear in mind that the defendant has not been convicted of aiding and abetting or assisting in the violation of the tax laws under either 18 U.S.C. § 7206 or under the general federal aiding and abetting statute, 18 U.S.C. § 2, but has instead been charged with the substantive offense of corruptly impeding or endeavoring to impede the due administration of the tax laws. The record in this case does not establish that he has done this.

The statute under which this indictment was brought is set forth under "Sec. 7212 Attempts to interfere with the administration of internal revenue laws. (a) Corrupt or forcible interference."

The defendant's major argument is that an essential element of Sec. 7212(a) of Title 26 is that the act or conduct of the accused involve the use of force or threats against the person of a particular government agent. Although this argument was properly rejected by the court in this case, the word "corruptly" should not be so easily written out of the statute. The court's interpretation of this section of the tax law has the effect of virtually eliminating the word "corruptly" from the statute. The statute requires that the defendant must "corruptly" obstruct or endeavor to obstruct the execution of the tax laws. This should mean something more than just obstructing the execution of the laws as a matter of fact. There is nothing inherently "corrupt" about the formation of a corporation.

Almost without exception, the reported cases concerning a prosecution under this Act have involved some act that would be either illegal under state or federal law or would tend to be corrupt independently of its purpose. See United States v. Ratcliff, 806 F.2d 1253 (5th Cir.1986) (threatening telephone calls to agent); United States v. Sciolino, 505 F.2d 586 (2d Cir.1974) (flash picture of agent and display of cartridge box); United States v. Johnson, 462 F.2d 423 (2d Cir.1972) (defendant barred entry into building; said agents could enter over his dead body; scuffle ensued and defendant assaulted arresting agents); United States v. Varani, 435 F.2d 758 (6th Cir. 1970) (letter threats of violence against agent); United States v. Rybicki, 403 F.2d

599 (6th Cir.1968) (defendant appeared in his doorway holding a double-barreled shotgun); United States v. Guthrie, 385 F.2d 410 (7th Cir.1967) (defendant threatened that "he might shoot any government agents who approached him in connection with the investigation"); United States v. Reeves, 752 F.2d 995 (5th Cir.1985) (filing frivolous lien against residence of IRS investigator). In each case, there was a retaliatory element against the agent or the Internal Revenue Service.

Such is the case in the prosecutions under 18 U.S.C. § 1503 cited in the Court's opinion. United States v. Griffin, 589 F.2d 200, 206–07 (5th Cir.1979) (testifying falsely before a federal grand jury); United States v. Partin, 552 F.2d 621 (5th Cir.1977) (inducing witness not to appear and to testify falsely); Anderson v. United States, 215 F.2d 84 (6th Cir.1954) (effort to alter testimony of witnesses).

In United States v. Hylton, 710 F.2d 1106 (5th Cir.1983), the Court held that the filing of non-frivolous trespass complaints against IRS agents did not violate § 7212(a), even though the action may have been motivated by a desire to impede the agent's investigation. In other words, legal activity is not proscribed by § 7212(a), even though it is undertaken for the purpose of impeding or obstructing the execution of the tax laws.

The only case cited not dealing with actions interfering directly with agents of the IRS is United States v. Williams, 644 F.2d 696 (8th Cir.1981), in which the defendant was convicted under § 7212 for encouraging others to submit false W–4 forms. In that case, the "corrupt" action involved a direct interference with and violation of IRS procedures and regulations.

In this case, the single allegation of activity is that the defendant created a corporation, a lawful act under the laws of California. Without the allegation of false tax returns, the defendant is not charged with a corrupt act, but simply charged with forming a corporation for the purpose of laundering money.

No other case under this section involves the setting up a corporation for potential

use as a tax shield. Every case cited other than *Williams* in the statute's thirty-seven year history involved actions which directly interfered with IRS agents attempting to carry out their jobs. A reading of the statute itself reveals why. Aside from the caption for the statute, virtually the entire text is directed at either the direct or indirect use of activity against agents of the IRS which have the effect of obstructing or interfering with the enforcement of the tax laws. This is not a statute designed to sweep within its reach any and all efforts to evade taxation. Other more specific statutes are designed for that purpose. *See, e.g.,* 18 U.S.C. § 7201.

The legislative history reveals that Congress intended only to prohibit interference with IRS agents, either through physical or verbal threats or through other actions which impeded their efforts to enforce the tax code. The court in *United States v. Walker,* 514 F.Supp. 294, 304–05 (E.D.La. 1981), reviewed the history of this provision and traced its origins to two previous acts, Section 3601(c) of the Internal Revenue Code of 1939 and Section 38 of the Internal Revenue Act of 1864, both of which dealt solely with interference directed at agents of the IRS. The Senate Report on § 7212 also speaks only of acts which impeded the ability of IRS agents to perform their function. S.Rep. No. 1622, 83rd Cong., 2d Sess. 1954, *reprinted in* [1954] U.S.Code Cong. & Admin.News 4621, 5254.

The defendant was simply tried under the wrong statute. I would reverse the conviction.