**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jean C. HYLTON, Defendant-Appellee.**

No. 82–2285
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1983.

Rehearing Denied Oct. 24, 1983.

James R. Gough, George A. Kelt, Jr., Houston, Tex., for plaintiff-appellant.

Donald W. MacPherson, Phoenix, Ariz., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Implicit in the concept of representative government and express in the provisions of the first amendment, is the guarantee that Congress shall make no law abridging the right of the individual to petition the Government for a redress of grievances. In the case, *sub judice,* appellee Jean Hylton's exercise of this inalienable right was made the basis of an indictment charging her with corruptly endeavoring to intimidate and impede two Internal Revenue Service (IRS) agents by filing criminal trespass complaints against them with the local Justice of the Peace and County Attorney in Chambers County, Texas. *See* 26 U.S.C. § 7212(a).[1] Since we conclude that Jean Hylton's actions represented an exercise of the right to petition for a redress of griev-

---

1. 26 U.S.C. § 7212(a) provides:

Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this ti-

tle, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force," as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

ances in its pristine form, we affirm the district court's judgment absolving her from criminal sanction for the exercise of her constitutional right.

### I. *Facts and Course of Proceedings*

Jean C. Hylton and her husband, V.R. Hylton, residents of Chambers County, Texas, have a lengthy history of speaking out politically against governmental policies with which they disagree. The Hyltons have argued strenuously against the tax laws of the United States and have feuded with the IRS for several years.

The Hyltons and the IRS have had a long standing bitter dispute. Several years ago, the Hyltons recorded a declaration with Chambers County that stated that federal agents were not to trespass upon their property. The IRS received notice from the Hyltons informing them that they were not welcome on the Hyltons' property. This notice was placed in the IRS file concerning the Hyltons and was readily accessible to the IRS agents. Indeed, the district court

2. The record reveals that the Hyltons have posted as many as six "no trespassing" signs on their property. Moreover, "no trespassing" signs as large as four feet by six feet have been placed near the entrance to the Hylton's property. Although the Government contended in its original complaint against Hylton that no "no trespassing" signs were posted at the time of the agents' entrance, the district court concluded that the evidence "overwhelmingly points to a contrary conclusion."

3. The following discussion transpired:
RENTSCH: Just a second. We both seem to be having our recorders going on here. Ah, my name is MICHAEL RENTSCH.
J. HYLTON: Would you spell that? Would you write that down for me right there, please.
RENTSCH: Ah. I'll spell it for you.
J. HYLTON: Well, I can hardly see.
RENTSCH: Yeah.
J. HYLTON: It's what—6:15 p.m. and it's dark. I can't hardly see.
RENTSCH: Ten after 6:00.
J. HYLTON: Well.
RENTSCH: My name is MICHAEL E. RENTSCH.
J. HYLTON: How do you spell that?
RENTSCH: RENTSCH.
J. HYLTON: REN–T–S–CH?
RENTSCH: Un Huh.
J. HYLTON: Okay. And what is you...
RENTSCH: I am a Special Agent.

noted that the Hyltons had adorned their private property with "no trespassing" signs and that "responsible officials" were well aware of the Hyltons' desire to exercise their right to privacy.[2]

In the fall of 1981, the IRS undertook a criminal investigation into the tax activities of the Hyltons' son, David. Then, in November of 1981, IRS agents intensified their search for the Hyltons' son. On November 4, IRS Special Agents Michael E. Rentsch and Thomas E. Artru entered the Hylton premises to inquire of the whereabouts of David. The special agents, in total disregard of the "no trespassing" signs and the Hyltons' previous letters requesting that their privacy rights be respected, proceeded toward the Hyltons' front door without a warrant, where they were met on the front porch by Jean Hylton. A conversation ensued after which the agents departed. Both the agents and Jean Hylton recorded the conversation, and there is no doubt as to the total content of the conversation.[3]

J. HYLTON: A Special—Agent with who?
RENTSCH: The ah Criminal Investigation Division of Internal Revenue Service.
J. HYLTON: Criminal Investigation Division?
RENTSCH: Yes, Ma'am.
J. HYLTON: Okay. What is your address?
RENTSCH: 300 Willow—Room 302.
J. HYLTON: Okay.
RENTSCH: That's in Beaumont.
J. HYLTON: Okay. And what is your telephone number?
RENTSCH: It is 839–2442.
J. HYLTON: Okay. And what is your supervisor's name?
RENTSCH: JEFF RUFFIN.
J. HYLTON: How do you spell that?
RENTSCH: R U F F I N.
J. HYLTON: Okay. And what is your name, Sir?
ARTRU: Thomas.
J. HYLTON: MR. THOMAS?
ARTRU: No, THOMAS—first name.
J. HYLTON: Okay.
ARTRU: Middle initial E. Last name AR-TRU—A R T R U.
J. HYLTON: Okay. And your address, MR. ARTRU?
ARTRU: Same. All information is same.
J. HYLTON: Okay. Information same. Okay. Ah...
RENTSCH: Ma'am. Ma'am.
J. HYLTON: Gentlemen, I'm going to have to read the Privacy Act of 1974.

The next day, Jean Hylton filed a criminal complaint against the IRS agents with Chambers County Attorney Eugene T. Jenson.[4] County Attorney Jenson testified that he filed the criminal informations against the IRS agents since the complaints indeed appeared to allege violations of the Texas criminal trespass statute.[5]

On January 20, 1982, a two-count indictment was filed in federal district court against Jean Hylton. The indictment charged Hylton with corruptly endeavoring to impede IRS agents in their official capacity and with obstruction of justice, violations of 26 U.S.C. § 7212(a) and 18 U.S.C. § 1510. Hylton immediately waived her right to a jury trial and filed numerous pretrial motions, including a motion to dismiss on first amendment grounds. The motion was denied, the Government insisted upon a jury trial, and the case was tried before the jury on only one count, the count alleging that Hylton corruptly endeavored to intimidate and impede IRS agents in

RENTSCH: I will allow you to read the Privacy Act.

J. HYLTON: Ah. It provides that each federal agency inform individuals whom it asks to supply information of the authority of the solicitation of information and whether disclosure of such information is mandatory or voluntary. Okay. Is this mandatory or voluntary?

ARTRU: All we want to know is DAVID HYLTON at home?

J. HYLTON: I'm asking you a question? Is this information mandatory or voluntary?

ARTRU: I'm I'm asking you a question and I'm not going to answer any questions. All I want to know is DAVID HYLTON at home?

J. HYLTON: MR. ARTRU. Ah. I'd like to know the law—title and section that gives you jurisdiction to ask these questions. Would you please cite that law for me?

ARTRU: It says right there on my credentials, Ma'am.

J. HYLTON: Okay. Could we—would you. If you'll let me see it, I'll write it down or else if you'll.

ARTRU: Well, I. All I want to do is just ask—Is DAVID HYLTON at home?

J. HYLTON: I'm asking you the law—title and section—that gives you jurisdiction.

ARTRU: We're not going to answer any questions . . .

J. HYLTON: To ah . . .

ARTRU: If DAVID HYLTON is at home, we would like to speak to him.

J. HYLTON: To ask these questions . . .

ARTRU: If not, we're going to leave.

J. HYLTON: MR. ARTRU.

ARTRU: I'm not going to answer any questions for you, ma'am.

J. HYLTON: Did you and ah—MR. RENTSCH—Do you gentlemen realize that you're trespassing on private property?

ARTRU: Well, we are going to leave. Would you have MR. DAVID HYLTON contact either one of us at the telephone numbers on here, and we will leave.

J. HYLTON: I want to know the law, gentlemen, that gives you the jurisdiction to come and ask questions on this property of DAVID . . . . . . .

4. The complaint alleged that on or about November 4, 1981, Michael E. Rentsch and Thomas E. Artru did intentionally and knowingly enter property and the said habitation of Jean Hylton without the effective consent of the said Jean Hylton, and the said Michael E. Rentsch and Thomas E. Artru acting together, did then and there have notice not to enter said premises, in that Jean Hylton, the owner of said premises had signs posted to be reasonably likely to come to the attention of intruders and the posted signs warned Michael E. Rentsch and Thomas E. Artru not to enter said premises.

5. An examination of the applicable Texas statute indicates that County Attorney Jenson was justified in his conclusion that Hylton had alleged a violation of the Texas criminal trespass statute. Section 30.05 of the Texas Penal Code states:

(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so.

(b) For purposes of this section:

(1) "Entry" means the intrusion of the entire body; and

(2) "Notice" means:

(A) oral or written communication by the owner or someone with apparent authority to act for the owner;

(B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; or

(C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden.

(c) An offense under this section is a Class B misdemeanor unless it is committed in a habitation or the actor carries a deadly weapon on or about his person during the commission of the offense, in which event it is a Class A misdemeanor.

V.T.C.A., Penal Code tit. 7, § 30.05.

their official capacity by filing her non-fraudulent criminal complaints. After a verdict of guilty was returned by the jury, the district court granted a motion for acquittal, finding Hylton's conduct to have been protected under the first amendment. This appeal by the Government followed.

## II. *Jurisdiction and Double Jeopardy*

■ At the outset, this Court is presented with appellee Hylton's argument that this Court has no jurisdiction to entertain this appeal by the Government from the district court's judgment of acquittal, since the district court's judgment of acquittal constituted a finding of insufficient evidence to sustain the jury's verdict. Indeed, the district court did enter a "judgment of acquittal" after the jury returned a verdict of guilty. However, it is abundantly clear that the district court entered this judgment not due to a finding of insufficient evidence, but due to the district court's determination that Hylton's conduct was constitutionally protected as a matter of law, even if the Government had demonstrated a violation of 26 U.S.C. § 7212(a) with sufficient evidence.

■ It is well established that the district court's characterization of its actions does not control the classification of such actions for purposes of determining appellate jurisdiction. *See United States v. Kehoe,* 516 F.2d 78, 82 (5th Cir.1975). Although the district judge characterized his actions as a "judgment of acquittal," it is clear that he did not enter the judgment due to a finding of insufficient evidence. As the district court, 558 F.Supp. 872, stated in its memorandum opinion,

> Even assuming the evidence to have established beyond any doubt that the defendant acted with the sole purpose of obstructing the investigation of the two IRS agents, the Court finds that the application of the criminal law to the facts and circumstances of this case constitutes an impermissible infringement upon the first amendment right of the defendant to petition the Government for the redress of grievances. Accordingly, *even construing the evidence and reasonable inferences therefrom in a manner sup-*

> *portive of the jury's verdict, the Court holds that the defendant has committed no offense proscribed by 26 U.S.C. § 7212(a).*

(emphasis in original).

■ This Court would elevate form over substance if it characterized the district court's actions as a finding of insufficient evidence. We hold that the district court's judgment, although termed as a judgment of acquittal, was a finding as a matter of law that Hylton's conduct was constitutionally protected, even assuming that the Government had proved a technical violation of 26 U.S.C. § 7212(a). Certainly, the Government can appeal a district court's ruling on constitutional protections without running afoul of the double jeopardy clause. If this Court concluded that the district court had reached an erroneous legal conclusion, and we do not so hold, we simply would be required to render judgment on the jury's guilty verdict. No new trial would be necessary. Hence, this appeal is not barred by the double jeopardy clause, this Court has jurisdiction, and, therefore, we proceed to the merits of the Government's appeal.

## III. *The Nonfraudulent Complaints*

■ The Government contends that the trial court erroneously took away from the jury the ultimate issue of the good faith of the defendant after the jury had concluded that Hylton acted in bad faith in filing her complaint against the IRS agents. However, this argument mischaracterizes the district court's actions. The district court did conclude that Hylton's motivations in filing the criminal complaints were "questionable." Nevertheless, the district court went on to conclude that even if Hylton enjoyed the trouble her complaints may have caused the IRS agents, her conduct still was constitutionally protected since her complaints were not frivolous, but, in fact, were factually accurate. We find no error in the district court's actions in this regard.

The district court concluded that "there were no triable issues of fact" with respect to any contention that Hylton's criminal trespass complaints were frivolous and this

conclusion is unarguably supported by the record. The County Attorney who filed the complaints testified that he filed the complaints since the complaints alleged violations of the Texas criminal trespass statute. The record adequately indicates that Hylton's complaint was filed upon accurate factual allegations that did constitute a basis for a criminal trespass complaint. Once again, the district court did not circumvent the jury's finding on good faith, the district court concluded only that the complaints were nonfraudulent, even if Hylton took pleasure in the annoyance her complaints may have caused the IRS agents. Thus, we find no error in the district court's conclusion that the complaints were nonfraudulent.

## IV. *The Right to Petition for the Redress of Grievances*

In the Government's final point of error, the Government contends that the district court erred by concluding that Hylton's filing of the nonfraudulent complaints was constitutionally protected. We disagree.

As the United States Supreme Court has held, the right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the bill of rights." *See United Mineworkers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). Inseparable from the guaranteed rights entrenched in the first amendment, the right to petition for re-

dress of grievances occupies a "preferred place" in our system of representative government, and enjoys a "sanctity and a sanction not permitting dubious intrusions." *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945). Indeed, "[i]t was not by accident or coincidence that that rights to freedom in speech and press were coupled in a single guarantee with the rights of the people peaceably to assemble and to petition for redress of grievances." *Id.* at 323. Moreover, the Supreme Court has held expressly that the first amendment right to petition protects the individuals right to file an action with a "reasonable basis" in a state tribunal. *Bill Johnson's Restaurants, Inc. v. NLRB,* —— U.S. ——, ——, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983).[6] Thus, we are presented with the issue of whether Hylton may be convicted of violating 26 U.S.C. § 7212(a) for filing a factually accurate, nonfraudulent criminal complaint against federal agents with the appropriate local law enforcement officials.

Having thoroughly reviewed the record and the district court's holding, we have concluded that Hylton's actions represent a legitimate and protected exercise of her right to petition for the redress of grievances. The record clearly reveals that Hylton placed a high value upon her right to personal privacy and genuinely attempted to protect her rights through the orderly pursuit of justice—the filing of citizen complaints with a reasonable basis.[7] Although

---

**6.** Although *Bill Johnson's Restaurants* appears to be the most definitive statement on this issue, other cases have impliedly, if not expressly, held that the first amendment right to petition is broad enough to protect an individual's right to file a suit with reasonable basis in a state or federal tribunal. *See Gregory v. City of Chicago,* 394 U.S. 111, 89 S.Ct. 946, 948, 22 L.Ed.2d 134 (1969) ("Shortly after the original Constitution was adopted, again undoubtedly in an attempt to 'secure the Blessings of Liberty,' the Bill of Rights was added to the Constitution, in which the first amendment, later made applicable to the states by the fourteenth amendment, provides that 'Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievance.' "); *California Motor Transport Co. v. Trucking Un-*

*limited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1979) ("We conclude that it would be destructive of rights of association and of petition to hold that groups with common interest may not, without violating the antitrust laws, use the channels and procedures of *state* and federal agencies and courts to advocate their cases ...") (emphasis added); and *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 2227, 44 L.Ed.2d 600 (1975) ("The first amendment, of course, is applicable to the states through the fourteenth amendment.").

**7.** Of course, whether the IRS agents conduct was privileged or immunized as a matter of federal law is an issue to be determined in the criminal trespass proceeding against the IRS agents. However, the fact that the agents may have a valid defense does not vitiate Hylton's right to petition for a redress of grievances in a nonfraudulent complaint.

we do not condone the Hyltons' continued opposition to this Nation's tax laws, we likewise cannot condone the imposition of criminal sanction for Hylton's exercise of her constitutional right.

We emphasize that we do not find the provisions of 26 U.S.C. § 7212(a) to be in violation of the first amendment in all cases. Certainly, the Government may seek criminal sanction against those who illegally impede the due administration of this Nation's tax laws. Moreover, were it demonstrated that Hylton's complaints were frivolous and based upon contrived allegations, a totally different result might follow. However, in the context of this case, we simply cannot disagree with the district court's conclusion that Hylton's activities were constitutionally protected.

Finally, in response to the Government's contention that Hylton's activities were not constitutionally protected since her non-fraudulent complaints were motivated by a desire to impede the IRS agents' investigation, we simply quote from the Seventh Circuit's opinion in *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1343 (7th Cir. 1977).

> Likewise, we consider it irrelevant to the applicability of the right to petition that its exercise might have the effect of causing professional injury to the official about whom complaints are made, or even that the complainer may be aware of or pleased by the prospect of such injury. Whenever substantial charges of any credibility are made, a shadow of doubt, at least, may fall upon their object. This effect follows too naturally from its cause for its presence to vitiate the propriety of the use of First Amendment rights, if those rights are to retain meaning. The possibility that a citizen who feels himself to have been abused by a particular federal official may take satisfaction when the official gets his perceived due is too human for First Amendment protection to depend on its absence.

*Accord Bill Johnson's Restaurants v. NLRB,* —— U.S. at ——, 103 S.Ct. at 2169.

## V. *Conclusion*

This Court affirms the district court's holding that Hylton's conduct constitutes a legitimate exercise of her constitutional right to petition for redress of grievances. Accordingly, the district court's judgment is affirmed in all respects.

AFFIRMED.