UNITED STATES of America,
Plaintiff–Appellee,

v.

Russell L. PRICE, Defendant–Appellant.

No. 90–10416.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 26, 1991.

Decided Dec. 9, 1991.

Henry C. Martillaro, Martillaro & Martillaro, Carson City, Nev., for defendant-appellant.

Robert A. Bork, Asst. U.S. Atty., Reno, Nev., for plaintiff-appellee.

Before WALLACE, Chief Judge, WIGGINS and BRUNETTI, Circuit Judges.

WALLACE, Chief Judge:

Price appeals from his conviction on three counts of obstruction of proceedings in violation of 18 U.S.C. § 1505. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

In April 1989, Hightower, a revenue officer with the Internal Revenue Service (IRS), contacted Price by telephone. Price owed taxes for 1985 and had not filed his tax return for 1987. Price refused to meet with Hightower, maintained that he could not pay his taxes in full, and would not supply a financial statement. Hightower filed a lien on property owned by Price and a levy against Price's income from insurance company renewal premiums.

Shortly after, Price contacted Mulligan, a staff assistant to Price's congressional representative, because the Member's office had helped him with tax problems in the past. After contacting the IRS, Mulligan informed Price that he should contact Hightower. Price then "became very upset, and he said if he had to see Ms. Hightower he'd bring a gun to the IRS building." Mulligan offered to call Silver, Price's accountant, and ask him to act as an agent for Price during his meeting with the IRS. Price consented, but Silver declined to act as Price's agent. Mulligan then contacted the local IRS office to inform the IRS of the threat made by Price.

Mulligan later called Price and advised that Silver had declined to act as his agent at the meeting with the IRS. Price responded that he needed representation because the IRS had threatened him. Mulligan indicated that if he was unable to get an agent, Price should contact the IRS directly. Price responded angrily that "if he must have a meeting with the IRS, he would have a meeting with the IRS, but that [Mulligan] might just read about somebody getting shot down there when he did." Mulligan did not report this second

statement to the IRS until several days later.

Soon after this conversation, Agents Delgado and Florez of the Internal Security Division of the IRS went to Price's home. Apparently, at this time, the agents were only aware of the first threat that was communicated to Mulligan. The agents were in casual clothes because they were involved in another investigation that required surveillance. The agents showed Price their credentials and badges and indicated that they were Treasury Department inspectors. Price did not challenge the authenticity of the agents' credentials and waved the agents into his home.

Price said that he wanted to tape record the conversation. Agent Delgado responded that recording the conversation was not permitted because the agents did not also have a tape recorder. Price became visibly upset and stated that he wanted a witness and was going to call the sheriff. Price then leaped out of his chair and was heading directly toward Agent Delgado. Delgado put his hands out to maintain a safe distance with Price and redirected Price's movement toward the kitchen. The agents followed Price into the kitchen.

After an initial unsuccessful attempt, Price made telephone contact with a 911 dispatcher. Price told the dispatcher that two men claiming to be police officers were threatening him and Price requested that deputies be sent to his residence. A transcript of the telephone conversation indicates that at one point Price stated "I'm going to stay on the line with you. Also, I'm not saying another word, and nobody's moving or going anywhere." Agent Delgado testified that he and Agent Florez did not leave Price's home because they had not finished admonishing Price and leaving at that time would cause the sheriff's department to stop them later.

Shortly after Price's telephone call, four patrol cars arrived at the home with six or seven deputies. When they pointed their guns at the front door of the residence, the agents came out with their hands in the air with badges and identification. Eventual-

ly, the deputies were satisfied that Delgado and Florez were federal agents.

Price then began yelling that the agents' identification was not authentic and that he wanted to file a police report against the agents. Before the agents left the area, Agent Delgado attempted to advise Price that making threats against an IRS employee is a violation of federal law.

Price's testimony directly conflicted with the testimony of the agents. Price testified that the agents followed him into his house without properly identifying themselves, that he asked the agents to leave, and the agents refused, resulting in Price's call to the sheriff.

Price was indicted on three counts of obstruction of proceedings in violation of 18 U.S.C. § 1505. Count I was based on Price's statement to Mulligan that if Price had to meet with Hightower, Price would bring a gun to the IRS's building. Count II was based on Price's threat that if he met with the IRS, Mulligan might read about someone getting shot. Count III was based on Price's communicating a false report to the sheriff's department, and thereby causing the agents to be detained by the sheriff's deputies while the agents were engaged in their official duties. Following a jury trial, Price was convicted on all three counts.

## II

Price contends that the evidence supporting his convictions was insufficient. "[W]e must determine, upon viewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the crimes' essential elements beyond a reasonable doubt." *United States v. Ocampo*, 937 F.2d 485, 488 (9th Cir.1991).

### A.

Price contends that there was insufficient evidence to support his convictions on counts I and II for obstruction of proceedings. Section 1505 provides in part:

Whoever corruptly, or by threats or force, or by any threatening letter or

communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States ...—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1505. The crime of obstruction of proceedings has three essential elements. First, there must be a proceeding pending before a department or agency of the United States. *See United States v. Sutton,* 732 F.2d 1483, 1490 (10th Cir.1984), *cert. denied,* 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985). Second, the defendant must be aware of the pending proceeding. *See id.* Third, the defendant must have intentionally endeavored corruptly to influence, obstruct or impede the pending proceeding. *See United States v. Laurins,* 857 F.2d 529, 536–37 (9th Cir. 1988) (*Laurins*), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). "The obstruction need not be successful; the jury may convict one who 'endeavors' to obstruct such a proceeding." *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976) (*Vixie*).

Clearly, a tax proceeding was pending before the IRS. *See, e.g., id.* ("[a]n administrative investigation is a 'proceeding' within the meaning of 18 U.S.C. § 1505"). There was also sufficient evidence that Price was aware of the pending tax proceeding. Price contacted the IRS and Mulligan to discuss his tax problems and was aware that the IRS filed a levy on his insurance premium income.

Although two of the elements of the crime were clearly established, Price contends that he lacked the requisite intent to violate section 1505. Price argues that the government must establish that Price intended that Mulligan communicate the threat to Hightower. The requisite intent to violate section 1505, however, is merely that the "defendant must have acted 'corruptly,' i.e., that the act must be done with the purpose of obstructing justice." *Lau-*

*rins,* 857 F.2d at 536–37. Causing a threat to be communicated to the IRS is one means to obstruct a pending proceeding. However, "[t]he proper inquiry is whether a defendant had the requisite corrupt intent to improperly influence the investigation, not on the means the defendant employed in bringing to bear this influence." *United States v. Mitchell,* 877 F.2d 294, 299 (4th Cir.1989). Section 1505, like the other obstruction of justice statutes, can be violated by a variety of methods "limited only by the imagination of the criminally inclined." *Id.* (internal quotations omitted).

There was sufficient evidence that Price intended to influence, obstruct or impede corruptly the tax proceeding. Hightower asked Price to meet with her and bring a financial statement. Price refused and requested that Mulligan intercede in the tax proceeding on his behalf. In effect, Mulligan became the conduit between Price and the IRS. Price then responded to Mulligan's suggestions that Price meet with the IRS directly with threats against IRS officials. Although Price contends that under the facts and circumstances of this case, his threats were merely made out of frustration and could not have been taken seriously, Mulligan testified that she took both threats seriously.

The evidence was also sufficient to find that Price communicated the threats to Mulligan in order to avoid meeting with IRS officials or otherwise to influence or obstruct corruptly the progress of the pending tax proceeding. Whether Price intended to accomplish this objective by causing Mulligan, who was acting as Price's contact with the IRS, to take actions that would result in the obstruction of the proceeding or whether Price intended that the actual threat be communicated to the IRS is irrelevant. All that is required is that Price intended that the proceeding be obstructed or impeded. Under the facts of this case, there was sufficient evidence that Price intended to influence, obstruct or impede the pending proceeding.

■ Price contends that threats that are expressly conditional can not result in a violation of section 1505. Price relies on

*United States v. Mitchell,* 812 F.2d 1250 (9th Cir.1987) (*Mitchell*), but that case is distinguishable. That case concerned 18 U.S.C. § 871, which criminalizes threats against the President. *Mitchell,* 812 F.2d at 1251. Price has cited no authority for the proposition that conditional threats are not violations of section 1505. Clearly, a conditional threat, such as if Price had to meet with the IRS he would bring a gun and someone may be shot, can be used as a method to impede or obstruct a proceeding under section 1505.

### B.

Price also contends that there was insufficient evidence to support his conviction for obstruction of proceedings under count III. Price argues that he was merely exercising his constitutional rights by calling the sheriff's department and, therefore, he cannot be convicted for violating section 1505.

The same tax proceeding, about which Price was aware, was pending. The agents were investigating threats that were made to obstruct the tax proceeding. *See Vixie,* 532 F.2d at 1278. The agents were also attempting to admonish Price to discontinue his threatening behavior. The conviction under count III, therefore, depends on whether there was sufficient evidence that Price corruptly intended to influence, obstruct or impede the pending proceeding. Price alleges that the agents were trespassing and he had a constitutional right to contact the local authorities.

Price relies on *United States v. Hylton,* 710 F.2d 1106 (5th Cir.1983). Hylton filed nonfraudulent criminal trespass complaints against IRS agents after they entered her property, which was posted with "no trespassing" signs. *Id.* at 1108–09. The Fifth Circuit held that the filing of the complaints was a protected exercise of Hylton's right to petition for the redress of grievances, notwithstanding that the complaints may have also been motivated by a desire to impede the agents' investigation. *Id.* at 1111–12. Significantly, the court also stated that "were it demonstrated that Hylton's complaints were frivolous and based upon contrived allegations, a totally different result might follow." *Id.* at 1112.

*Hylton* is clearly distinguishable from this case. Although an individual should not be punished for merely exercising his or her right to call the police, an individual does not have a right intentionally to communicate a false report to local law enforcement agencies in order to impede or obstruct a pending administrative proceeding. There was substantial evidence that Price's statements to the dispatcher and the deputies were frivolous and based upon contrived allegations. For example, Price told the dispatcher that the agents threatened him. Price also told the deputies that later arrived at his home that the agents kicked his door open, came in waving guns, and threatened him. The agents, however, testified that they showed Price their badges and credentials, and Price consented to the agents entering his home. A neighbor testified that the agents entered Price's home in a normal fashion and thereby corroborated the agents' testimony. Although Price's testimony contradicted the testimony of the agents, the jury was entitled to believe the agents.

Price further contends that even if he consented to the agents initial entry into his home, he clearly withdrew that consent when he telephoned the sheriff's department. Price relies on *United States v. Ward,* 576 F.2d 243 (9th Cir.1978), in which we held that although the taxpayer originally consented to the possession by the IRS of his business records, the IRS could not retain the records after the taxpayer withdrew his consent. *Id.* at 244. Here, however, there was sufficient evidence to find that Price never withdrew his consent. Price told the 911 dispatcher "I'm going to stay on the line with you. Also, I'm not saying another word, and nobody's moving or going anywhere." Agent Delgado testified that if Price indicated, either by words or actions, that he did not want to continue speaking with the agents, the agents would have left Price's residence.

### III

At oral argument and in his reply brief, Price argued that the district court erred in

not instructing the jury that Price must have intended that Mulligan communicate the threats made by Price to Hightower. Price also contended that the jury should have been instructed that only unconditional threats violate section 1505. Price conceded at oral argument that these arguments were not clearly raised in his opening brief. Absent unusual circumstances, "[w]e decline to address arguments not raised in the appellant's opening brief." *Lamb–Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 973 n. 2 (9th Cir.1991).

AFFIRMED.