**UNITED STATES of America, Appellee,**

v.

**Leander Benedict CITROWSKE,
Appellant.**

**No. 91–1701.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1991.

Decided Dec. 12, 1991.

John E. Mack, New London, Minn., for appellant.

Jeffrey S. Paulsen, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Citrowske (appellant), a Minnesota farmer, was convicted of filing more than fifty 1099 tax return forms falsely reporting over $20 million of miscellaneous income to the recipients. The named "payees" included a judge, lawyers, bankers, sheriff's department officers, county commissioners and other government employees who had various roles in the foreclosure and liquidation of appellant's property. Appellant was convicted of one count of violating 18 U.S.C. § 1001 (1989), and was sentenced to four months incarceration, four months in a halfway house, two years supervised release, and a $50 special assessment. Citrowske argues on appeal that the tax filings were protected protest speech, that the evidence was insufficient, and that the official victim offense level adjustment to his sentence was improper. We affirm appellant's conviction and sentence.

Appellant was a farmer in the midwest who, like so many others in the mid–1980's, lost most of what he owned through bankruptcy and foreclosure. In 1987, appellant allegedly became aware of a strategy to try to reclaim his property through filing false tax returns with the I.R.S. The advocates of the strategy encouraged farmers to send a bill to the takers of their property stating an amount due. When recipients refused to pay, a 1099 was to be sent by the farmer to the recipients treating the property as ill-gotten taxable gain. When the recipients failed to report the 1099 amount, the I.R.S. would likely investigate and hopefully uncover evidence supporting the farmer's contention of a wrongful taking.

Appellant, acting through the Lee Rose Acres Living Trust in 1988 and 1989, sent 1099s to at least thirty-six different people who were allegedly associated with his bankruptcy and the foreclosure proceedings against his property. The returns were transmitted with the I.R.S. cover return, form 1096, which was signed "[u]nder penalties of perjury" as "true, correct, and complete." The appellant sought the recipients' social security numbers for comple-

tion of the returns, but when they refused to supply them he simply stated on the returns "Requested DENIED". The returns were mailed to the Kansas City, Missouri regional I.R.S. service center where they were processed by computer.

Later in the year, when some of the 1099 recipients filed their individual income tax returns, the I.R.S. noticed that they had not reported the income from the trust. At least four of the recipients were notified of audit selection because of the unreported income before the I.R.S. became suspicious that the 1099s might be fraudulent. The I.R.S. then initiated costly manual procedures to intercept and remove the suspicious 1099s from the system.

Appellant was subsequently indicted for knowingly and willfully using a false writing or making a false statement to an agency of the United States in a matter under its jurisdiction. See 18 U.S.C. § 1001 (1989). Appellant moved for dismissal of the indictment on the ground that his actions were protected protest speech under the first amendment. The district court referred the matter to a magistrate judge [1] for a recommendation.

In his review and report, the magistrate judge found this case distinguishable from *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning is protected speech), and *United States v. Hylton*, 710 F.2d 1106 (5th Cir.1983). In *Hylton*, the court held that the filing of a non-fraudulent and factually accurate criminal trespass complaint with the county attorney, against I.R.S. investigators who entered onto taxpayer's property clearly marked "no trespassing," was a valid exercise of taxpayer's constitutional right to redress grievances through proper channels. *Id.* at 1111–12. The magistrate judge concluded the present case was more analogous to the situations addressed by our court in *United States v. Moss*, 604 F.2d 569, 571–72 (8th Cir.1979) (actions challenging the constitutionality of the income tax and encouraging others to file false tax forms is not protected speech),

*cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980), and *United States v. Buttorff,* 572 F.2d 619, 623–24 (8th Cir.) (free speech right not absolute where speech is so closely intertwined with encouragement of imminent conduct which violates federal law and has the potential of substantially hindering the administration of the revenue), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). The district court adopted the magistrate judge's findings. After being convicted by the jury, appellant was sentenced to a total of eight months incarceration.

## FIRST AMENDMENT

■ Appellant's argument on appeal repeats the argument made to the district court. Appellant argues that the 1099 returns were purely protest speech, filed with an appropriate government agency, not for the purpose of obtaining any personal monetary gain in terms of tax avoidance, and intended to be provocative as opposed to conclusory regarding the amounts reported. Appellant suggests that the strong governmental interest in permitting citizens to redress grievances, question potentially illegal behavior, and notify authorities of wrongdoing, justifies his conduct. Appellant also cites 26 U.S.C. § 7623 (1989), the tax code provision authorizing the payment of money to tax informants, in support of his redress argument.

While appellant's constitutional arguments are persuasively made, they appear to miss the mark. It has not been suggested that the statute in this case is a content based regulation of speech. In light of this, the magistrate judge correctly points out that the freedom of speech is not so absolute as to protect speech or conduct which otherwise violates or incites a violation of the tax law. *See, e.g., United States v. White,* 769 F.2d 511, 516 (8th Cir.1985); *Moss,* 604 F.2d at 569; *Buttorff,* 572 F.2d at 619.

Appellant was charged with knowingly and willfully making a false statement or false writing to a government agency. Although a defendant's reason for making a false statement may be relevant to the jury's deliberations, the desire to redress grievances or protest for change does not necessarily exclude a finding of a criminal violation. *See United States v. Freeman,* 761 F.2d 549, 551 (9th Cir.1985) ("words alone may constitute a criminal offense, even if they spring from the anterior motive to effect political or social change"), *cert. denied,* 476 U.S. 1120, 106 S.Ct. 1982, 90 L.Ed.2d 664 (1986); *cf. United States v. Rowlee,* 899 F.2d 1275 (2d Cir.1990) (speech); *United States v. Quinones,* 871 F.2d 1436 (9th Cir.1989) (religion).

We believe the magistrate judge identified relevant case authority even though the cases cited involved encouragement to and assistance of others in violating the tax laws. Where, as here, a defendant's conduct directly violates a content neutral tax law, the case against the defendant seems even stronger. *See, e.g., United States v. Mal,* 942 F.2d 682 (9th Cir.1991) (false W–4 forms filed); *United States v. Williams,* 928 F.2d 145 (5th Cir.) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 58, 116 L.Ed.2d 34 (1991); and *United States v. Daly,* 756 F.2d 1076 (5th Cir.) (encouraging *and* assisting in the filing of false tax returns is not protected speech), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). As the magistrate judge stated when distinguishing between the filing of the 1099s in the present case and a criminal complaint in *Hylton,* appellant's actions in this case simply "cannot be viewed as the proper path for petitioning for redress under the rights protected by the First Amendment."

## SUFFICIENCY OF THE EVIDENCE

■ Appellant next argues that the evidence did not support a jury finding of a false statement or intent to submit false information to a government agency. Appellant appears to be arguing that in addition to his desire to redress grievances, he also filed the 1099s because he reasonably believed that he may have been required to file them and that the specific amounts were stated in good faith. In support of this proposition, appellant cites 26 U.S.C. § 6041 (1989), which describes the duty to file a 1099. In short, the code section requires that when certain payments of

$600 or more are made in the same year, to the same person, in the course of a trade or business, a 1099 return must be filed. Appellant testified at his trial and apparently explained his actions in a manner consistent with our summary here.

Viewing the evidence in the light most favorable to the government, we cannot say that a reasonable jury could not have found appellant guilty beyond a reasonable doubt. The jury was asked to decide whether appellant had submitted false statements, knowingly, to the I.R.S. and it concluded he had. Our review of the record suggests there was little if any question at trial about these elements of the offense charged. *See Freeman*, 761 F.2d at 552–53 (falsity was determined as a matter of law where there was "no issue for the trier of fact as to what the returns stated or whether the calculations and entries were correct"). The government introduced testimony and physical evidence suggesting that appellant's motives were vindictive and his actions were intended to harass the victims. We find no evidence to suggest any rational basis for the 1099 amounts selected by appellant. The jury heard the evidence, had the opportunity to evaluate the appellant's explanation of his conduct, and apparently believed he submitted false statements knowingly and willfully.

Appellant also refers us to *Cheek v. United States*, ── U.S. ──, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), which he claims stands for the proposition that when unlawful conduct, such as the conduct in question in this case, occurs in good faith, it is not necessarily a criminal violation. Of course, in almost any criminal case, a jury must evaluate both conduct and mental state. While *Cheek* generally stands for the proposition stated, *id.* at 611, the determination of good faith motivation is left to the jury. *Id.* In *Cheek*, the Supreme Court simply determined that the district court acted improperly by instructing the jury that it could not consider the defendant's subjective beliefs if his conduct was objectively unreasonable. *Id.* at 611–12. No such issue arose in the present case; the jury was not precluded from considering defendant's subjective motives in determining whether his actions were knowing and willful.

SENTENCING

 Finally, appellant challenges the three point addition to his offense level based on their being "official" victims of his crime. *See* U.S.S.G. § 3A1.2 (1989). After this appeal was docketed, our court decided an appeal of a sentence only in *United States v. Telemaque*, 934 F.2d 169 (8th Cir.1991) (when victims of a crime were a bankruptcy judge, Congressman and the Commissioner of the I.R.S., an upward adjustment for official victims was not a clearly erroneous application of the guidelines). As in *Telemaque*, we find no clear error here in application of the guidelines.

We therefore affirm appellant's conviction and sentence.