**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael G. KUBALL, Defendant–Appellant.**

**No. 92–30063.**

United States Court of Appeals, Ninth Circuit.

Submitted * Sept. 17, 1992.

Decided Sept. 30, 1992.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App.P. 34(a); Ninth Circuit Rule 34–4.

**530**

Charles E. Tulin, Anchorage, Alaska, for defendant-appellant.

Robert E. Lindsay, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WRIGHT, FLETCHER and CANBY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Michael Kuball was convicted of violating 26 U.S.C. §§ 7206 and 7212. He filed Form 1099 information returns that falsely reported payments of over $900,000 in non-employee compensation to eight persons. He also filed a Form 1040 tax return that falsely reported income of more than $900,000 from a "default judgment" and claimed a refund of over $600,000.

He was sentenced to 6 months in prison and fined $600. On appeal, he argues that the evidence was insufficient to support the verdict, and that the tax filings were pro-tected protest speech. We affirm both his sentence and conviction.

**I**

Kuball failed to file income tax returns from 1980 to 1988. Because the IRS was unable to collect the taxes owed, his wages and truck were seized.

He subsequently sent a series of letters and documents to his former employer, a tow truck operator, and 6 past and present IRS employees. His former employer had complied with the IRS' levy of his wages, and the tow truck operator had helped the IRS seize his truck. One IRS employee had arranged for the levy of his wages and the seizure of his truck. The other IRS employees' names appeared on the liens or the levies.

He sent letters to those persons, requesting their taxpayer identification numbers. The letters were followed by notices demanding payments of sums ranging from $83,484.87 to $158,272.01. He sent a second series of notices to those persons announcing that liens had been "placed against the person and property" equal to the amount of payment demanded. These notices also said that the liens had been "placed for collection with the Internal Revenue Service."

Kuball prepared Form 1099 information returns reporting that he had paid those persons sums equal to the payments he had demanded from them. He also completed a Form 1096 reporting that he had paid $927,313.29 in non-employee compensation to these individuals. In signing the form, he declared, under penalty of perjury, that both Form 1096 and the Forms 1099 were true, correct and complete. Despite this claim, Kuball had paid no money to those persons.

He also filed a 1989 tax return. He did not show any wages earned from his former job, but listed $927,373.29 as income from a "default judgment." He showed the same amount in federal income tax withheld, and claimed a refund of $667,-708.76. He was neither paid nor owed such income.

## II

On appeal, Kuball argues that the evidence was insufficient to prove that he intentionally falsified the information submitted on the tax forms. As the government says, he did not preserve this issue on appeal because he failed to move for a judgment of acquittal at trial. *United States v. Smith,* 924 F.2d 889, 893 (9th Cir.1991).

He also failed to preserve this issue as to interference with the administration of the internal revenue laws. His motion for a judgment of acquittal, made at the close of the government's evidence, was denied. Because he failed to renew the motion at the close of his case, he "effectively waived his objection to the sufficiency of the government's evidence." *United States v. Comerford,* 857 F.2d 1323, 1324 (9th Cir.1988), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989). The court may review the denial of a nonrenewed motion for acquittal, but only to prevent a manifest miscarriage of justice or for plain error. *Id.* In this case, however, we would affirm even if we were to consider the motion.

## III

The evidence overwhelmingly supports the guilty verdict. We review the sufficiency of the evidence in the light most favorable to the prosecution to determine whether "any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Adler,* 879 F.2d 491, 495 (9th Cir.1988).

"A violation of 26 U.S.C. § 7206(1) is complete when a taxpayer files a return which he does not believe to be true and correct as to every material matter." *United States v. Marashi,* 913 F.2d 724, 736 (9th Cir.1990). Kuball testified that no one paid him $927,373.29, and that he did not have such income. He also knew that he had not actually obtained a default judgment against any of the recipients of his demands for payment. Moreover, he admitted that he had never paid money to the purported recipients. But he filed both a tax return and information returns that reported otherwise, and signed the forms under penalty of perjury.

The evidence also supports his conviction under 26 U.S.C. § 7212(a). Section 7212(a) is aimed at prohibiting efforts to impede "the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records." *United States v. Reeves,* 752 F.2d 995, 998 (5th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). Kuball testified that the "system [did] not allow" for his former employer, the tow truck operator, or the IRS employees to be held "accountable" in the way that he wished. He hoped the threatening letters would have an effect on the recipients. He also hoped to benefit financially by obtaining a substantial tax refund.

From this evidence, the jury could find beyond a reasonable doubt that Kuball was guilty of filing false tax and information returns and interfering with the administration of internal revenue laws.

## IV

Kuball contends that he filed the forms to call the government's attention to alleged mistakes as to his tax liabilities from 1980 to 1988. He says that the First Amendment protects this method of petitioning the government for redress.

Like the right to free speech, the right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mineworkers of America, District 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). Yet "[t]he first amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose." *United States v. Barnett,* 667 F.2d 835, 842 (9th Cir.1982). For example, the First Amendment does not protect defendants who go beyond mere advocacy and assist in the creation and operation of tax evasion schemes. *United States v. Solomon,* 825 F.2d 1292, 1297

(9th Cir.1987), *cert. denied,* 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988). Similarly, "the desire to redress grievances ... does not necessarily exclude a finding of a criminal violation." *United States v. Citrowske,* 951 F.2d 899, 901 (8th Cir.1991). The First Amendment does not protect Kuball merely because he characterized his filing of false information and tax returns as petitions for redress.

He also chose to ignore two legal alternatives for challenging the tax laws. He could have paid the taxes allegedly due, filed a refund claim, and if denied, brought suit in federal court. *Cheek v. United States,* 498 U.S. 192, ——, 111 S.Ct. 604, 613, 112 L.Ed.2d 617 (1991). He could also have challenged the government's claims of tax deficiencies in the Tax Court without first paying the tax. *Id.* His actions "cannot be viewed as the proper path for petitioning for redress under the rights protected by the First Amendment." *Citrowske,* 951 F.2d at 901.

The judgment and sentence are AFFIRMED.